FIREMEN'S INSURANCE COMPANY, Appellant, vs. WASHBURN COUNTY, Respondent.

*October 11—November 5, 1957.*

216

For the appellant there· were briefs by *Clausen, Hirsh & Miller* of Chicago, Illinois, and *Falge & Moran* of Ladysmith, and oral argument by *James P. Moran.*

For the respondent there was a brief by *Warren Winton,* district attorney, and *Ward Winton,* assistant district attorney, and oral argument by *Warren Winton.*

CURRIE, J. The issues on this appeal are as follows:

(1) Is a county, which contracts with the state highway commission pursuant to the provisions of sec. 84.07, Stats.,[1] to maintain and repair a state trunk highway, liable for its negligence in failing to properly maintain and repair such highway?

(2) Is a complaint to recover damages against a county, for its negligent repair of a highway, demurrable which alleges the giving of the notice to the county clerk, specified by sec. 81.15, Stats.,[2] but fails to allege the filing of a claim

[1] Sec. 84.07 reads: "(1) *State expense; when done by county; definition.* The state trunk highway system shall be maintained by the state at state expense. The commission shall prescribe regulations and specifications for such maintenance. The commission may arrange with any county highway committee to have all or certain parts of the work of maintaining the state trunk highways within its county performed by the county. Maintenance of state trunk highways includes the operations, activities, and continuing processes for their repair, preservation, restoration, and reinforcement, the removal and control of snow and the removal, treatment, and sanding of ice, and all measures deemed necessary to provide adequate traffic service. It also includes the care and protection of trees and other roadside vegetation and suitable planting to prevent soil erosion or to beautify highways pursuant to section 80.01 (3).

"(2) *County repaid for state work.* When any county maintains the state trunk highways, in compliance with the arrangement with the state highway commission, the commission shall pay the actual cost of such maintenance, including the allowance for materials and the use of county machinery and overhead expenses agreed upon in advance. Such payments shall be made upon presentation by the county clerk of a properly itemized and verified account by the county highway committee."

[2] Sec. 81.15 provides in part as follows: "If damages happen to any person or his property by reason of the insufficiency or want of repairs of any highway which any town, city, or village is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such town, city, or village. . . . If such damages happen by reason of the insufficiency or want of repairs of a highway which any county by law or by agreement with any town, city, or village is bound to keep in repair, or which occupies any land owned and controlled by the county, the county

for such damages which is required by secs. 59.76 [3] and 59.77 [4] ?

Originally in this state the duty of maintaining and repairing all highways was placed upon the towns. Coincident with such duty, the towns were made liable by statute for damages incurred as a result of want of repair of any road or bridge. Sec. 103, ch. 16, R. S. 1849. In *Kittredge v. Milwaukee* (1870), 26 Wis. 46, 48, the court held that such statute, then sec. 120, ch. 19, R. S. 1858, was applicable to cities by reason of the provisions of sec. 126, ch. 19, R. S. 1858, which latter section extended the provisions of said ch. 19 to "all parts of the state, except where special provisions, inconsistent therewith, have been or shall be made

---

shall be liable therefor and the claim for damages shall be against the county."

[3] Sec. 59.76 provides in part as follows: "(1) No action shall be brought or maintained against a county upon any account, demand, or cause of action when the only relief demandable is a judgment for money, except upon a county order, unless the county board shall consent and agree to the institution of such action, or unless such claim shall have been duly presented to such board and they shall have failed to act upon the same within the time fixed by law. . . .

"(2) The decision of the county board disallowing in whole or in part any claim of any person shall be final and a bar to any action founded thereon, except as provided in subsection (1), unless an action be brought to recover against the county within six months after such disallowance. Failure to allow a claim before the adjournment of the next annual session of the board after the claim is filed shall be deemed a disallowance."

[4] Sec. 59.77, in so far as material, reads: "(1) *In general.* Every person, except . . . having any such claim against any county shall:

"(a) Make a statement thereof in writing, setting forth the nature of his claim and the facts upon which it is founded, . . .

"(b) Such statement shall be filed with the county clerk; and the county board may in its discretion require that all or certain types of such statements shall be verified by the affidavit of the claimant, his agent, or attorney; and no such claim against any county shall be acted upon or considered by any county board unless such statement is made and filed pursuant to this section."

by law, in relation to particular towns, counties, cities, or villages."

Sec. 120, ch. 152, Laws of 1869, was amended by sec. 2, ch. 46, Laws of 1872, which amendment read, "provided, that in counties where the system of county highways is in force, the county shall be liable for injuries sustained on roads that have been adopted by the counties." Thus, as early as 1872, the legislature specifically imposed liability upon counties for defective highways. In the Revised Statutes of 1878, the statute imposing liability for defective highways became sec. 1339, and continued under such section number until the 1923 legislature renumbered it sec. 81.15. The material portions of such section in its present form, and as they read at the time of the accident giving rise to plaintiff's cause of action, is set forth in footnote No. 2.

In 1869, the legislature created sec. 96, ch. 152, Laws of 1869, which provided that the commissioners who laid out state roads should receive their compensation from the different counties through which such roads passed. This statute subsequently became sec. 1317, R. S., and was renumbered sec. 84.07 in the 1923 revision. Amendments were made to such statute from time to time. In 1917, the legislature created a state trunk highway system by enacting ch. 175, Laws of 1917. Such ch. 175, Laws of 1917, repealed sec. 1317 and re-created it in a radically revised form. In its changed form, sec. 1317 placed upon each county the duty of maintaining the whole of the state trunk system lying within its boundaries, such maintenance to be done under the direction of the state highway commission. Sub. 5 of sec. 1317, as created by ch. 175, Laws of 1917, provided in part as follows:

"Claims for damages which may be due to the insufficiency or lack of repair of the trunk system shall be against the county, and sections 1339, 1340, and 1340a of the statutes shall apply to such claims."

There can be no doubt but that under the provisions of the afore-quoted statute a county was liable to respond in damages for any injury to person or property resulting from the county's negligence in repairing a state trunk highway. This situation continued until a further change was made in the statute by the 1931 legislature enacting sec. 3, ch. 22, Laws of 1931. Existing sec. 84.07, Stats., was repealed and simultaneously a new section bearing the same number was re-created. Subs. (1) and (2) of the re-created statute read substantially as they do in present sec. 84.07, as quoted in footnote No. 1 of this opinion. By reason of this 1931 change in sec. 84.07, the duty of maintaining state trunk highways was shifted from the counties to the state, but the state highway commission was authorized to enter into arrangements with county highway committees for the counties doing the actual work of such maintenance on a nonprofit basis, whereby the counties would only be paid their actual cost of performing such work.

The first case to come before the supreme court subsequent to this 1931 change in sec. 84.07, Stats., in which it was sought to recover against a county for the want of repair of a state trunk highway maintained by the county, was *Larsen v. Kewaunee County* (1932), 209 Wis. 204, 244 N. W. 578. Recovery was denied on the ground that there was no statutory duty placed upon the county to maintain a state trunk highway under sec. 84.07, as re-created by the 1931 legislature, but only a contractual duty. It was pointed out in Mr. Justice NELSON's opinion that the 1931 legislature had not amended sec. 81.15 to correspond with the changes made in sec. 84.07. Sec. 81.15, as of the time the *Larsen Case* arose, only imposed liability upon a county for insufficiency or want of repair of a highway, other than a county road, which it was *"by law* bound to keep in repair." The gist of the opinion appears in the following quoted extracts therefrom (209 Wis. pp. 209, 210) :

"It would hardly seem reasonable to place the liability for damages upon a county when the law placed the absolute duty of maintaining the state highways upon the state. It seems doubtful that the legislature would intentionally impose upon a county a liability for the failure of the state to perform its duty in maintaining state highways. . . .

"Unless it can be said that a county which has contracted with the state highway commission to maintain state trunk highways located within its borders is 'by law bound to keep in repair' such highways, we do not see how a county can be held liable for damages caused by the insufficiency or want of repairs of a state highway which the state itself is clearly by law bound to maintain. Sound reason, it seems to us, does not permit such a construction. Due to the uncertainty as to the legislative intent, we cannot say that the legislature intended to place such liability upon counties."

The decision in *Larsen v. Kewaunee County, supra,* was followed by that in *Crowley v. Clark County* (1935), 219 Wis. 76, 261 N. W. 221. In the latter case recovery was sought for personal injuries sustained as a result of a collision between an automobile and a road grader, which latter vehicle was being operated by the defendant county in removing snow from a state trunk highway. Such snow removal was undertaken by the county pursuant to an arrangement made under sec. 84.07, Stats., by the county with the state for the maintenance of the highway. The court affirmed an order sustaining a general demurrer to the complaint, and in its opinion stated (219 Wis. p. 81):

"It is very doubtful whether, under the law as it existed at the time of the accident, a county could be held liable for any act or failure to act, with respect to the maintenance of a state highway. In *Larsen v. Kewaunee County,* 209 Wis. 204, 244 N. W. 578, we held that a county engaged in maintaining a state highway pursuant to an arrangement with the state is not 'bound by law to maintain a highway,' and therefore no recovery could be had from it. We there specifically called attention to an existing law, which made that conclusion inevitable, but so far as we are presently

informed no law has been enacted which makes a county liable to a person who has suffered an injury as a result of its failure properly to maintain a *state* highway."

Following the decision in the *Crowley Case,* a revision of sec. 81.15, Stats., was made by ch. 373, Laws of 1939, so that thereafter a county was made liable for the insufficiency or want of repair of any road which it is *"by agreement with any town, city, or village,"* as well as *"by law,"* bound to keep in repair. This is the status of sec. 81.15 today as it applies to the instant action. The significant feature of the 1939 amendment is that, while liability is imposed upon a county for failure to properly maintain a highway pursuant to an agreement entered into with a town, city, or village, the statute is silent as to any highway maintained by a county pursuant to an agreement entered into with the state. Counsel for the plaintiff urge that, where a county, such as the defendant, maintains a state trunk highway pursuant to an agreement made with the state highway commission, it is *"by law"* bound to keep such highway in repair within the meaning of sec. 81.15. However, to reach this result counsel concedes that it will be necessary for this court to overrule *Larsen v. Kewaunee County, supra.*

In view of the fact that during the fourteen-year period from 1917 to 1931 a county was liable for its negligence in failing to properly maintain a state trunk highway, this court as now constituted might very well have come to the opposite conclusion from that which the court of 1932 did in the *Larsen Case* in construing sec. 81.15, Stats. However, the question now before us, of whether to overrule such case, is not confined to the task of merely determining whether that case was originally wrongly decided.

The legislature, in making the 1939 revision of sec. 81.15, Stats., hereinbefore recounted, acted shortly after the matter had been specifically called to its attention by the court's statement in its opinion in the *Crowley Case.* Nevertheless,

it only saw fit to amend sec. 81.15 so as to make counties liable for the insufficiency and want of repair of highways which the counties by agreement with *towns, villages, and cities* were obligated to maintain. The omission of any mention of agreements entered into by the counties with the state makes applicable the rule of statutory construction of *"expressio unius est exclusio alterius."*

When the legislature enacted such amendment of sec. 81.15, Stats., in 1939, the words of the existing statute, *"by law .* . . is bound to keep in repair," already bore the gloss of this court's interpretation in the *Larsen* and *Crowley Cases.* We can draw no other conclusion than that the legislature, in mentioning agreements entered into by counties with towns, villages, and cities, but omitting to mention agreements entered into with the state, did not wish to change the rule of the *Larsen* and *Crowley Cases.* This being so, we deem that a proper exercise of judicial self-restraint requires that we not overrule *Larsen v. Kewaunee County, supra,* however much we may deplore the exemption of counties from liability for negligence in failing to properly maintain the most heavily traveled highways in the state.

Counsel for the plaintiff acknowledge that, because maintenance of highways is ordinarily a governmental and not a proprietary function, there can be no recovery against a county for damages sustained as a result of its negligence in performing such function in the absence of a statute abrogating the immunity which exists at common law. However, counsel urge that, in a situation where a county is not maintaining its own highways but those of the state as a result of contract obligating the county so to do, the county is then performing a proprietary function, and, therefore, there is no need for a statute waiving immunity as a condition precedent to enable the plaintiff to recover. However, this point has been expressly ruled against such contention by *Lickert v. Harp* (1934), 213 Wis. 614, 252 N. W. 296.

Lastly, plaintiff's counsel contend that to deny recovery to the plaintiff in the instant case violates sec. 9, art. I, Wis. Const., which provides:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

A similar contention was advanced in *McCoy v. Kenosha County* (1928), 195 Wis. 273, 218 N. W. 348, 57 A. L. R. 412, and decided adversely thereto. It was there held that the words *"injuries and wrongs"* of such constitutional provision must be construed in the light of the common law as it stood at the time of the adoption of the constitution in 1848. The immunity of all governmental units from liability for negligence occurring in the performance of a governmental function, such as maintenance of highways, was then well recognized in the common law. Surely, as pointed out by Mr. Justice ESCHWEILER's opinion in *McCoy v. Kenosha County, supra,* the framers of the constitution had no thought of making such a radical departure in the law as to abolish such immunity when they inserted sec. 9, art. I, Const., into the constitution. The author of the annotation in 57 A. L. R. 419, which follows the reporting of the *McCoy Case,* points out that, while most all state constitutions contain provisions similar in import to that found in sec. 9, art. I, the *McCoy Case* seems to be the only case in which the rule of governmental immunity from liability for negligence in performing a governmental function has been challenged as violating such a constitutional provision.

The further question arises as to whether under the provisions of sec. 9, art. I, Const., the legislature, having imposed liability in 1917 upon counties for their negligent maintenance of state trunk highways, in 1931 could abro-

gate completely such liability. Counsel for the plaintiff urge that the legislature was powerless to destroy the remedy previously created, and cite in support thereof the following statement appearing in the opinion in *State ex rel. Blockwitz v. Diehl* (1929), 198 Wis. 326, 330, 223 N. W. 852:

"It has been held that no specific remedy is guaranteed by the constitutional provision. A remedy may not be taken away altogether, but it may be changed or modified providing it leaves an adequate remedy, though less convenient, prompt, or speedy."

However, the constitutional provision referred to in the above quotation was not sec. 9, art. I, Wis. Const., but the provision of the federal constitution, sec. 10, art. I, that "No state shall . . . pass any . . . law impairing the obligation of contracts, . . ." The court was there concerned with the issue of whether a certain statute violated the contract rights of the owner of a tax sale certificate. Vested property and contract rights stand in a very different category from inchoate remedies for acts which are not actionable at common law but are made so by statute. Such remedies can always be abolished prospectively without violating sec. 9, art. I, Wis. Const., or any other provision of the state or federal constitutions. *McCoy v. Kenosha County, supra,* at page 284; and *Daniels v. Racine* (1898), 98 Wis. 649, 652, 74 N. W. 553. We quote from the opinion in *Daniels v. Racine, supra,* as follows:

"Since the only right of action in the case at bar was given by statute, there can be no question but that the legislature had the power to wholly take it away by statute. *Dillon v. Linder,* 36 Wis. 344; *Rood v. C., M. & St. P. R. Co.* 43 Wis. 146; *McLimans v. Lancaster,* 63 Wis. 600, 601."

While it is our considered judgment that under the present status of our law no cause of action exists against a county grounded upon its negligence in failing to properly main-

tain and repair a state trunk highway, there is still an additional ground for determining that plaintiff's complaint is demurrable. This is because such complaint fails to allege compliance with secs. 59.76 and 59.77, Stats. Under these statutes, the plaintiff could not institute its action until it had filed its claim in writing with the county clerk setting forth the nature of such claim and the facts upon which it is founded, and the county board had either disallowed the claim or had failed to act on such claim within the time fixed by law for so doing. Implicit in the requirements of secs. 59.76 and 59.77 is that the amount of the claim be stated in dollars and cents, because without this it would be impossible for the county board to properly allow the claim.

Counsel for plaintiff maintain that the allegations of the complaint as to the giving of the notice to the county clerk required under sec. 81.15, Stats., dispensed with the necessity of further alleging compliance with secs. 59.76 and 59.77. With this contention we cannot agree.

We consider that the precedent which is controlling on this issue is *Wentworth v. Summit* (1884), 60 Wis. 281, 19 N. W. 97. In that case an action was brought against the defendant town to recover damages for a personal injury alleged to have been due to a defect in a bridge constituting part of a public highway. Sec. 824, R. S. 1878 (predecessor to present sec. 60.36, Stats.), provided that no action for a money judgment shall be maintained against any town unless a statement of the claim shall have been filed with the town clerk, and ten days shall have elapsed subsequent to the next town meeting. Plaintiff's complaint alleged the filing of his claim in compliance with such statute but failed to allege the giving of the notice required by sec. 1339, R. S. 1878 (predecessor to sec. 81.15). Such sec. 1339 then provided:

". . . No such action shall be maintained against any county, town, city, or village, unless within ninety days after the happening of the event causing such damage, notice in writing, signed by the party, his agent, or attorney, shall be given to the county clerk of the county, a supervisor of the town, one of the trustees of the village, or mayor, or city clerk of the city, against which damages are claimed, stating the place where such damage occurred, and describing generally the insufficiency or want of repair which occasioned it, and that satisfaction therefor is claimed of such county, town, city, or village."

By subsequent amendment the legislature has shortened such period of giving notice from ninety to thirty days. The defendant town interposed a demurrer to the complaint on the ground that it failed to state a cause of action because it did not allege the giving of the ninety-day notice required by sec. 1339, R. S. 1878. Counsel for the plaintiff Wentworth argued that, because the complaint alleged that the plaintiff had presented or filed his claim for damages with the town clerk pursuant to sec. 824, R. S., no notice was required to be given to the town supervisors under sec. 1339, R. S. The court held to the contrary, and affirmed the order of the trial court in sustaining the demurrer. The rationale of the decision is set forth in the following extract therefrom (60 Wis. at p. 282):

"The filing of the plaintiff's claim for damages with the town clerk, as prescribed by sec. 824, R. S., is required for an entirely different purpose from that which is sought to be accomplished by giving the notice to the supervisors of the town, as required by sec. 1339. This latter section requires the notice to be given to the supervisors evidently for two purposes: *First,* that the supervisors may investigate the matter for the purpose of ascertaining whether the allegation of the party injured that the highway is defective or out of repair is in fact true; and, *second,* to enable them to repair the defect in order to prevent further accidents. The other

notice is required so as to enable the supervisors of the town to present the claim for damages made by the plaintiff for the consideration of the electors at the coming town meeting, with a view to a compromise or settlement without suit. The purposes of the two sections are consistent with each other, and, in order to recover, the plaintiff must allege both the giving of the notice to the supervisors, under sec. 1339, and the filing of his claim for damages with the town clerk, as provided in sec. 824, and prove them on the trial."

It is obvious that secs. 59.76 and 59.77, Stats., are intended to serve the same purpose with respect to counties that sec. 60.36 does as to towns. This being so, a complaint, which is grounded upon a defective highway, is insufficient which does not allege both compliance with the notice requirement of sec. 81.15 and the filing of claim provisions of the applicable claim statutes, which, in the case of a county defendant, are secs. 59.76 and 59.77. The written notice alleged to have been given to the county clerk in the case at bar did not comply with the requirements of sec. 59.77 in at least one very important particular, *i. e.,* it did not state the amount of plaintiff's claim. Therefore, it was insufficient to substitute as a claim.

In the recent case of *Raube v. Christenson* (1955), 270 Wis. 297, 70 N. W. (2d) 639, it was held that, in an action against a county, whose employees had covered an arterial stop sign with snow and ice thus contributing to cause the plaintiff's injuries, strict compliance with the provisions of secs. 59.76 and 59.77, Stats., was required as a condition precedent to commencing the action. While the issue was there raised by a motion for summary judgment, and not by demurrer, we nevertheless are satisfied that, if the issue had been raised by demurrer, the demurrer would have been sustained.

*By the Court.*—Order affirmed.